IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANHEUSER-BUSCH, INC., ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 10-cv-1601 |
| ) | |
| STEPHEN B. SCHNORF, ET AL., ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 1988 and Local Rule 54.3, Plaintiffs Anheuser-Busch, Inc. ("AB Inc.") and Wholesaler Equity Development Corporation ("WEDCO") have moved for their attorneys' fees incurred in this litigation. In support of their motion, Plaintiffs rely on the Court's September 3, 2010 order granting Plaintiffs' partial motion for summary judgment on their Commerce Clause claim. AB Inc. and WEDCO seek the sum of $1,605,154.22 in attorneys' fees from Defendants, plus pre-judgment interest.

In response, Defendants[1] (hereinafter referred to as the Illinois Liquor Control Commission, "ILCC," or the "Commission") contend that Plaintiffs failed to achieve their stated goal in bringing the lawsuit and, in any event, that Plaintiffs' request for $1.6 million in attorneys' fees far exceeds what is reasonable or appropriate in a case which Plaintiffs dubbed "straightforward" and "clear cut." Having considered all of the arguments presented as well as the relevant Supreme Court and Seventh Circuit case law, the Court concludes that Plaintiffs did

---

[1] Defendants in this case are affiliated with the Commission. Stephen Schnorf is the Acting Chair and a Commissioner of the ILCC and Defendants John Aguilar, Daniel Downes, Sam Esteban, Michael McMahon, Martin Mulcahey, and Donald O'Connell are Commissioners of the ILCC. Defendant Richard Haymaker is Chief Legal Counsel of the ILCC. Defendants were named in this suit in their official capacities. See *Ex parte Young*, 209 U.S. 123, 157-60 (1908); *Entertainment Software Ass'n v. Blagojevich*, 469 F.3d 641, 644-45 (7th Cir. 2006).

not achieve their objective in bringing this lawsuit and thus have failed to demonstrate that they are entitled to an award of attorneys' fees. Accordingly, Plaintiffs' motion for attorneys' fees [167] is denied.

I. Background

On March 10, 2010, the Illinois Liquor Control Commission ruled that the State's Liquor Control Act precludes beer producer Anheuser-Busch, Inc. from acquiring, through its affiliate WEDCO, a 100% ownership interest in distributor CITY Beverage.[2] The Commission explained that "[p]reserving Illinois' three-tier distribution system of alcoholic liquor is a fundamental objective of the Liquor Control Act and the Illinois legislature for reasons of public policy." Plaintiffs Anheuser-Busch, WEDCO, and CITY Beverage filed this lawsuit on the same day challenging the Commission's interpretation on various federal constitutional grounds. They alleged that the Commission's ruling "threaten[ed] to scuttle a unique and important acquisition," denied them "the benefits of the transaction and its synergies," and prevented them from "compet[ing] on equal footing" with two small, in-state beer producers (Argus and Big Muddy) that exercised self-distribution rights.[3] In addition to requesting a declaration that the Commission's interpretation was unconstitutional, Plaintiffs asked the Court to use its discretion in fashioning a remedy that would extend self-distribution rights to all beer producers regardless of their location, so that Anheuser-Busch could proceed with its acquisition of WEDCO.

---

[2] The ILCC issued a two-part declaratory ruling. First, the Commission unanimously ruled that the Act "prohibits an Illinois license Non-resident dealer from possessing an ownership interest in a licensed Illinois distributor," and that Anheuser-Busch would be in violation of the Act if it or any affiliate "purchased any additional interest in CITY." Second, the Commission ruled, in a four-to-three decision, that in light of the "history and facts surrounding this case," including WEDCO's ownership of a 30% interest in CITY since 2005, the Commission would renew CITY's distributor's licenses "as currently owned," "absent any other disqualifying factors."

[3] The third in-state brewer that held a distributor's license, but did not self-distribute at the time of the summary judgment briefing, was Goose Island Beer Co. During summary judgment briefing, Plaintiff Anheuser-Busch held a small ownership interest in Goose Island and subsequently acquired the remaining interest in Goose Island.

On September 3, 2010, after three months of expedited proceedings following the filing of the complaint in this case and two and a half additional months in which the Court crafted its opinion, the Court granted Plaintiffs' motion for partial summary judgment, holding that Defendants' enforcement of the Illinois Liquor Control Act of 1934 (the "Liquor Control Act") violated the Commerce Clause of the United States Constitution insofar as it permits in-state, but not out-of-state, producers to self-distribute. However, the Court declined Plaintiffs' request to remedy the unconstitutionality of Illinois' system by extending the self-distribution privilege to out-of-state brewers, concluding that Plaintiffs' proposed remedy would be more disruptive to the existing statutory and regulatory scheme than the alternative remedy of withdrawing the self-distribution privilege from in-state brewers. The Court stayed its order until March 31, 2011, to give the Illinois General Assembly an opportunity to amend the Liquor Control Act if it chose to do so and then extended the stay at the parties' request [see 162, 187]. The General Assembly did in fact enact remedial legislation, and on June 1, 2011, Governor Quinn signed into law SB 754. The new law creates a "craft brewer's license" for in-state and out-of-state beer producers whose annual production is less than 15,000 barrels (465,000 gallons) and who may then obtain approval from the ILCC to self-distribute up to 7,500 barrels of that production in Illinois.

On October 29, 2010, after Plaintiffs dismissed their other remaining claims, the Court entered final judgment against Defendants and in favor of Plaintiffs. On November 3, 2010, AB Inc. and WEDCO filed a notice of appeal from this Court's September 3 opinion and October 29 final judgment on the sole issue of the proper remedy for Defendants' violation of the Commerce Clause. Defendants did not cross-appeal. Thus, the only issue on appeal was whether the Court's determination that nullification, rather than extension, of the self-distribution right utilized by a few small, in-state brewers was the proper remedy for Defendants' constitutional

violation. Once Governor Quinn signed SB 754 into law, the Seventh Circuit dismissed Plaintiffs' appeal as moot, noting that the new law "eliminates the geographically disparate treatment of beer distributors." See *Anheuser Busch Co., Inc. v. Schnorf, et al.*, Nos. 10-3298 & 10-3570, Order (7th Cir. July 8, 2011).

## II. Analysis

This case presents an interesting question on the issue of attorneys' fees. As the Court previously noted in addressing Defendants' stay motion, Plaintiffs' clearly won on the issue of whether Defendants' were violating the Commerce Clause, and Defendants' did not appeal. Defendants took the position that *Granholm* did not supply the relevant standard for this case—Defendants argued that the *per se* invalidity standard did not apply—and also maintained that the Twenty-first Amendment permits states "virtually complete control" over how to structure a distribution system. The Court, following *Granholm* and its progeny, disagreed and found that Defendants failed to articulate a legitimate local purpose that justified their discrimination against out-of-state brewers.

As Defendants note, the constitutional claim was resolved on summary judgment without discovery and turned on a straightforward application of *Granholm* and its progeny to the Commission's construction of state law. Plaintiffs themselves characterized the case as "straightforward" and "clear cut," noting that it turned on a "a single, well-defined question of law" calling for a "simple" application of a single case (*Granholm*). See DE 18 at 2, 4; DE 53 at 18. Defendants admitted "all of Plaintiffs' material facts and [did] not set out additional facts showing a genuine issue for trial." The focus was solely on a legal issue for which recent Supreme Court precedent paved a clear path. If that were the sum and substance of the case, Defendants would not have a leg to stand on in opposing a reasonable fee request and the

4

reasonable fee would be a tiny fraction of the $1.6 million sum sought by Plaintiffs in their fee petition.

However, it was (and is) readily apparent that Plaintiffs did not retain counsel (and pay them handsomely) to establish Commerce Clause precedent. Rather, as the timing of this lawsuit and the content of most, if not all, of the court filings confirm, Plaintiffs' "ultimate goal" was to pave the way for their acquisition of the remaining 70% interest in distributor City Beverage—or, as Plaintiffs themselves put it, to close "an extremely important business transaction for Plaintiffs." Pl. S.J. Reply at 23. And in this respect, Plaintiffs' failed. Their transaction cannot proceed, and their "opportunity for profit maximization" will not follow on the heels of this lawsuit. Furthermore, despite their victory on the constitutional issue, the end result of Plaintiffs' litigation strategy has left them worse-off. Plaintiffs sought an extension of self-distribution rights to all producers, but the Court's ruling (which was stayed to give the General Assembly time to act) would have barred any producers from self-distributing, which not only precluded Plaintiffs' from acquiring the remaining 70% interest in City Beverage, but also put Plaintiffs' existing 30% interest in jeopardy. The General Assembly acted while the stay was in place, and its amendment was even less favorable to Plaintiffs than the Court's ruling would have been—the new statute not only barred Plaintiffs from self-distributing (and hence blocked Plaintiffs' acquisition of City Beverage), but the General Assembly also extended self-distribution rights to small brewers across the nation, creating more competition for Plaintiffs beyond the two small, in-state brewers who self-distributed prior to this lawsuit.

The battle lines are well defined: Plaintiffs contend that they are entitled to all of their reasonable fees because they won a complete victory on the constitutional claim (in that the Court granted partial summary judgment to Plaintiffs on its commerce clause claim); Defendants

5

counter that Plaintiffs are entitled to little or no attorneys' fees because they achieved, at best, a very modest (and "Pyrrhic") victory that fell well short of their aim in bringing the litigation. That leaves the Court with the interesting question of whether (or how) to award fees to a party that wins on a straightforward, threshold issue, but gains little or nothing (and eventually loses ground) as a result of the litigation. With this background, the Court turns to the issue at hand.

A.  **General standards**

In order to entice competent attorneys to prosecute civil rights cases, Congress enacted 42 U.S.C. § 1988, pursuant to which a "prevailing party" in a § 1983 action is entitled to "reasonable" attorneys' fees. See *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Under the Supreme Court's self-termed "generous formulation" of the phrase, a civil rights plaintiff is considered to be a "prevailing party" if he or she succeeds on "any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (citing *Hensley*, 461 U.S. at 429); see also *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989).

The Supreme Court elaborated on the definition of prevailing party in three cases in the late 1980s, and then synthesized those rulings in *Farrar v. Hobby*. See *Hewitt v. Helms,* 482 U.S. 755, 761 (1987) (observing that "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail" and requiring the plaintiff to prove "the settling of some dispute which affects the behavior of the defendant towards the plaintiff"); *Rhodes v. Stewart,* 488 U.S. 1, 3 (1988) (explained that "nothing in [*Hewitt*] suggested that the entry of [a declaratory] judgment in a party's favor automatically renders that party prevailing under § 1988" and reaffirming that a judgment— declaratory or otherwise—"will constitute relief, for purposes of § 1988, if, and only if, it affects

the behavior of the defendant toward the plaintiff"); *Texas State Teachers Assn.,* 489 U.S. at 792 (emphasizing that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties"). In *Farrar*, the Supreme Court summed it up by stating that a plaintiff "prevails" when "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." 506 U.S. at 111-12.

In deciding the specific amount that is reasonable in the circumstances, the Supreme Court has directed district courts to consider as a "starting point" (or "lodestar") the number of hours expended in the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. The Court has stressed that the "most critical factor" in determining the reasonableness of a fee award is "the degree of success obtained" by the prevailing party. *Id*. at 436. As both parties here acknowledge, courts frequently attempt to measure success by viewing three factors: (i) the difference between the actual judgment and the recovery sought, (ii) the significance of the legal issues on which the plaintiff prevailed, and (iii) the public interest at stake in the litigation. See, *e.g.*, *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999).

The Supreme Court expressly has stated that when litigation of a § 1983 case leads to "excellent results" for the prevailing party, the plaintiff's attorney "should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. As the Court further explained, "[n]ormally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id*. Both the Supreme Court and the Seventh Circuit have stressed that a fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435; see also *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 (7th Cir. 1995). As the court of

appeals summarized, "*Hensley* makes clear that when claims are interrelated, as is often the case in civil rights litigation, time spent pursuant to an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998).

### B. Prevailing Party

As set forth above, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111-12. The Seventh Circuit has identified the "'key inquiry' as whether [plaintiff] attained his objective in bring the suit, or stated differently, whether the [defendant's conduct] redressed [plaintiff's] grievances and directed benefitted him." *Cady v. City of Chicago*, 43 F.3d 326, 329 (7th Cir. 1994). Whether Plaintiffs obtained their objective in bringing this lawsuit is a factual determination. *Id.* ("This is a factual determination which we review only for clear error.").[4]

Plaintiffs advanced a tripartite objective in this lawsuit. First, Plaintiffs sought "declaratory and injunctive relief to remedy the irreparable and substantial harm that will continue to result from Defendants' violation of the Commerce and Contracts Clauses of the United States Constitution." Compl. at ¶ 1. Without proving that Defendants were violating the

---

[4] There is no "rule or principle that will unerringly distinguish a factual finding from a legal conclusion." *Pullman-Standard v. Swint,* 456 U.S. 273, 288 (1982); See also *Gekas v. Attorney Registration and Disciplinary Com'n of Supreme Court of Illinois*, 793 F.2d 846, 849-50 (7th Cir. 1986). Nevertheless, "the decision to label an issue a 'question of law,' a 'question of fact,' or a 'mixed question of law and fact' is sometimes as much a matter of allocation [of authority between the primary and the secondary decision-makers] as it is of analysis." *Miller v. Fenton,* 474 U.S. 104 (1985). In *Gekas*, the Seventh Circuit concluded that, "[i]n the context of fee disputes, the district court, given its familiarity with the parties and the proceedings, is better positioned than the court of appeals to decide whether a plaintiff's lawsuit is causally linked to the relief obtained." *Gekas*, 793 F.2d at 849-50; see also *Ekanem v. Health and Hospital Corp. of Marion County,* 778 F.2d 1254, 1258 (7th Cir. 1985) (clearly erroneous standard of review applied). It seems to follow that determining whether Plaintiffs obtained their objective is a factual determination, while determining whether a party meets the definition of a "prevailing party" remains a legal question. See *Dupuy v. Samuels*, 423 F.3d 714, 718 (7th Cir. 2005).

8

Commerce Clause, Plaintiffs could not upset the ILCC's ruling that Plaintiffs' acquisition of City Beverage was contrary to Illinois law. Second, Plaintiffs asked the Court to remedy the constitutional violations by allowing all brewers (out-of-state and in-state) to self-distribute—in Plaintiffs' words, they sought a remedy which would allow them "to compete on equal footing with the in-state producers who are permitted to distribute beer to retailers." *Id.* at ¶ 2. Plaintiffs did not seek to reaffirm the rigid three-tier distribution system, but rather sought to weaken, or collapse, the distribution system such that all manufacturers – in-state or out-of-state – could sell directly to retailers. And finally, Plaintiffs made clear throughout the lawsuit that their ultimate goal was to close "an extremely important business transaction for Plaintiffs." Pl. S.J. Reply at 23. Plaintiffs, beginning with paragraph 3 of their complaint, repeatedly stressed the urgency of this lawsuit in the face of an impending business transaction:

> Defendants' actions threaten to scuttle a unique and important acquisition by WEDCO of the remaining 70 percent of CITY Beverage. Prior to Defendants' unconstitutional actions, WEDCO and CITY Beverage's majority owners had agreed to this transaction. The parties now face a State-decreed prohibition to closing this sale. Unless Plaintiffs receive immediate injunctive and declaratory relief, the prospect of WEDCO purchasing the remaining 70 percent ownership of CITY Beverage could vanish, which would cause extreme economic harm to Plaintiffs.

Compl. at ¶ 3.

A "fair inference" from Plaintiffs' complaint is that Plaintiffs were not concerned that two small in-state brewers (one of which had produced, at the time of summary judgment briefing, only 2,211.2 gallons of beer compared to AB's 77.6 million reported gallons in fiscal year 2010) were cutting into AB's market share. See *Cady*, 43 F.3d at 329 ("It is useful to look to the relief requested in Cady's complaint as a starting point"). Rather, Plaintiffs were upfront about their ultimate objective—they wanted to clear the path to closing on the City Beverage transaction. See Compl. at ¶¶ 3, 32; Pls.' Mot. to Schedule Decl. Judg. Hearing at ¶¶ 3-10, 19

(describing how WEDCO's attempts to purchase the remaining interest in City Beverage were thwarted by the ILCC's declaratory ruling); ("A substantial transaction involving a large business with hundreds of employees already has been put on hold because of Defendants' Declaratory Ruling regarding Liquor Control Act and, thus, is at great risk."); (discussing how the ILCC's ruling denies AB "the same opportunity for profit maximization and the ability to leverage the competitiveness of their brands through their control and focus of distribution function"). And the only way to even begin to achieve that objective in this litigation was to obtain the declaratory judgment that they requested in their proposed order:

> Upon Plaintiffs' motion for summary judgment on Count I of Plaintiffs' complaint, that Defendants' actions violate the Commerce Clause, it is hereby adjudged and ordered that:
>
> Declaratory Judgment
>
> Defendants violate the Commerce Clause of the United States Constitution by prohibiting out-of-state brewer AB Inc. from holding or acquiring Illinois Distributor's or Importing Distributor's Licenses or from holding, acquiring an interest in, or being affiliated with an entity that holds Illinois Distributor's or Importing Distributor's Licenses.

See Plaintiffs' Text of Proposed Order at 1, Ex. A to Pls.' S.J. Mot. The requested "Injunctive Relief" hewed to the same line, asking that Defendants be permanently enjoined from the following:

> 1. Denying, refusing to issue, refusing to renew, or revoking a license, or taking any other action against AB Inc. or any other entity, on the grounds that AB Inc. or its affiliates holds or acquires, or is affiliated with an entity that holds or acquires, Illinois Distributor's or Importing Distributor's Licenses.
>
> 2. Denying, refusing to issue, refusing to renew, or revoking the Distributor's or Importing Distributor's Licenses requested by or held by AB Inc., CITY Beverage – Illinois, L.L.C., CITY Beverage L.L.C., CITY Beverage – Markham L.L.C., Chicago Distributing L.L.C., or any of their affiliates on the grounds of AB Inc.'s affiliation with an entity that holds a Distributor's or Importing Distributor's License.

3. Denying, refusing to issue, refusing to renew, or revoking AB Inc.'s Non-Resident Dealer's license on the grounds that it holds a Distributor's or Importing Distributor's License or is affiliated with an entity that holds a Distributor's or Importing Distributor's License

4. Taking any other action against AB Inc., CITY Beverage – Illinois, L.L.C., CITY Beverage L.L.C., CITY Beverage – Markham L.L.C., Chicago Distributing L.L.C., or any of their affiliates based on any affiliation between AB Inc. and the CITY Beverage entities.

*Id.* at 2.

Turning to the ruling, the Court determined that the Commission's interpretation of the Act was unconstitutional insofar as it permitted in-state, but not out-of-state, producers to self-distribute. The Court then concluded, from a judicial standpoint, that withdrawing self-distribution rights from in-state producers was the more appropriate remedy than the ruling requested by Plaintiffs because it would eliminate the constitutional infirmity "while keeping intact most of the current three-tier system." The Court recognized that its remedy would "not materially advance Plaintiffs' ultimate goal in this litigation—clearing the path to closing on the City Beverage transaction" but later explained that its decision on the remedy "tracked both the governing principles and the actual dispositions of the only closely analogous cases cited by the parties." See Docket Entry 150 at 6-7. The Court also stayed enforcement of the order to give the General Assembly time to act on the matter if it so desired. In support of its decision to stay enforcement, the Court noted that the regulation of the distribution of liquor is a matter of public policy and a quintessential legislative function, and that state regulation of the alcoholic beverage industry involves legislative judgments with respect to temperance, public safety, taxation, licensing, and consumer protection, which courts are not as well equipped to make.

The circumstances in this case closely resemble those found in *Cady v. City of Chicago*. Cady sought a declaration that the manner in which defendants regulated access to a literature

rack "amount[ed] to an unconstitutional prior restraint and content-based censorship of the rights to freedom of religion and expression as guaranteed to Cady and others by the first and fourteenth amendments." 43 F.3d at 329. He also asked the court to temporarily and permanently enjoin the defendants from refusing to allow Cady to (i) display religious literature on the O'Hare Chapel literature rack and (ii) gratuitously distribute such literature, without insisting upon prior review or approval of that literature. *Id.* The Seventh Circuit noted that a "fair inference" from the complaint was that Cady wanted unfettered use of the literature rack and thus the district court, in assessing whether attorneys' fees were warranted, did not clearly err in finding that Cady's goal was to obtain "the ability to exercise his own First Amendment rights-to get an uncensored forum for distribution of his own religious literature." *Id.*

In *Cady*, the City removed the forum (the rack) to which Cady sought access, and thus Cady's actual grievances were not redressed—he still had no access to the rack in order to exercise his First Amendment rights. The fact that Defendants' behavior changed and no one else had access to the forum did not persuade the Seventh Circuit to award fees. Plaintiffs' situation here is similar to Cady's and distinguishable from those cases where the plaintiffs became "prevailing parties" when the defendants, either unilaterally, through settlement, or by court order, ceased the precise conduct that the plaintiffs sought to enjoin. *Cf. Foremaster v. City of St. George,* 882 F.2d 1485 (10th Cir. 1989); *Gekas,* 793 F.2d 846; *Lovell v. City of Kankakee,* 783 F.2d 95 (7th Cir. 1986). Here, Plaintiffs wanted everyone to be allowed to self-distribute, but the Court's order foreclosed that relief, at least until the General Assembly chose to act. And when the legislature acted, Plaintiffs were left in an even worse position—they still could not self-distribute or close their transaction, yet small brewers across the nation could sell directly to retailers.

To be sure, to have prevailed for purposes of § 1988, a party "'need not obtain relief identical to the relief [that it] specifically demanded, as long as the relief obtained is of the same general type,'" such as may occur when the result of the litigation shifts the status quo toward that which the plaintiff hoped to obtain. *Cady*, 43 F.3d at 329 (internal quotations omitted). But before they may be deemed prevailing parties, Plaintiffs must show that the litigation in some way redressed their grievances and directly benefitted them. *Hewitt,* 482 U.S. at 760-61; *Farrar*, 506 U.S. at 111-12. Here, the relief ordered (but stayed) by the Court and ultimately imposed by the General Assembly's new law was the opposite of what Plaintiffs wanted: Plaintiffs wanted direct access to the retailers, but the Court's ruling and the General Assembly's actions closed that avenue to Plaintiffs. Thus, while Defendants' conduct changed, it did not do so in a way that benefited Plaintiffs. In other words, based on the reasoning in *Cady*, 43 F.3d at 329, it is hard to see how Plaintiffs "attained [their] objective" in this litigation.

Plaintiffs maintain that they won a "significant constitutional victory" and that they "caus[ed] an injunction to be entered against enforcement of the discriminatory law, establish[ed] meaningful precedent, and vindicate[d] important federal rights and interests through declaratory and injunctive relief." Much like the Seventh Circuit's assessment in *Cady*, when the Court compares the relief requested by Plaintiffs in their complaint and proposed order with Plaintiffs' current posture, Plaintiffs' emphasis on the vindication of important federal rights appears to be "a post-hoc attempt to re-characterize [their] claims." *Cady*, 43 F.3d at 330. Plaintiffs have never been shy about what they sought to achieve in this lawsuit and why they wanted to litigate on an expedited basis. This lawsuit was filed on the same day that the ILCC issued its declaratory ruling, which in essence barred Plaintiffs' acquisition of City Beverage, and proceeded on an expedited basis to accommodate Plaintiffs' economic interests. The

litigation never supplied a strong flavor of vindicating constitutional rights or establishing "meaningful precedent"; rather, it always has been about saving an important commercial transaction.

Further, to the extent that the Court may have misread Plaintiffs' objectives in this litigation, "moral satisfaction" alone would not bestow "prevailing party" status on Plaintiffs in any event. See *Farrar,* 506 U.S. at 112; *Hewitt,* 482 U.S. at 762 (noting that "the moral satisfaction [that] results from any favorable statement of law" cannot bestow prevailing party status); *Cad*y, 43 F.3d at 329. Where a plaintiff obtains a declaratory judgment but is not benefitted by any change in the defendants' behavior toward him, he normally does not qualify as a prevailing party. See *Farrar,* 506 U.S. at 111-12; see also *Martinez v. Wilson,* 32 F.3d 1415, 1422 (9th Cir. 1994) (where plaintiffs' injunctive relief vindicated only a "generalized interest in having the government obey the law" and plaintiffs "derived no direct benefit," they were not "prevailing parties"). If Plaintiffs had brought this lawsuit solely to minimize competition from the in-state brewers who were given distributor's licenses—in other words, to level the playing field for all brewers such that none could act as distributors—then arguably the Court's ruling (had it gone into effect prior to the legislature's actions) would have given them nominal relief, as it would have prevented the two small in-state brewers from utilizing their distributor's licenses (and precluded additional licenses from being granted to in-state distributors). However, throughout this litigation and specifically in their proposed order, Plaintiffs made clear that they wanted all brewers to be able to act as distributors. That relief was never accorded, either in court or through the legislature. Moreover, the Court's judgment, to the extent it gave Plaintiffs some nominal relief pending legislative action, was stayed—and the General Assembly's action mooted even that small "victory."

The Court does not wish to minimize the constitutional infirmity created by Defendants' interpretation of the prior law, or Plaintiffs' role in bringing it to light. But an honest assessment of Plaintiffs' complaint and litigation strategy makes clear that they failed to attain the only thing they actually wanted in this litigation—to be able to acquire the remaining interest in City Beverage. Plaintiffs' post-ruling actions support this view in several respects.

First, Plaintiffs, not Defendants, appealed the Court's ruling on the Commerce Clause issue. See Notice of Appeal (seeking to appeal that portion of the order "denying plaintiffs' request to enter an injunction that would have permitted AB Inc. and its affiliates to distribute beer and to continue owning and be affiliated with an entity that distributes beer in Illinois, and that instead enjoins enforcement of certain provisions under the Illinois Liquor Control Act of 1934, such that no brewer may distribute beer in Illinois"). Shortly after the Notice of Appeal was filed, Plaintiffs stipulated to the dismissal with prejudice of their two remaining counts, which alleged violations of the Due Process Clause of the Fourteenth Amendment and the Contracts Clause. The Court then entered final judgment on all of Plaintiffs' claims.[5] On appeal, Plaintiffs sought reversal of "the court's imposition of the nullification remedy and extend ('reinstate') to out-of-state brewers the same right to own or operate an Illinois beer

---

[5] The Court notes that the issues presented by *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources,* 532 U.S. 598 (2001), and *Zessar v. Keith,* 536 F.3d 788 (7th Cir. 2008), do not figure heavily into the Court's analysis. *Buckhannon* holds that a suit's role as a catalyst in inducing the defendant to change its policies does not support an award of attorneys' fees; "a plaintiff 'prevails' only by obtaining a judicial order altering its legal status *vis-à-vis* its adversary." *National Rifle Ass'n of America, Inc. v. City of Chicago, Ill.*, 646 F.3d 992, 993 (7th Cir. 2011). *Zessar* applies *Buckhannon* to a case that became moot when the statute being contested was materially amended between a district court's opinion and its judgment. Here, although the Court stayed its order to give the legislature time to act, the Court entered judgment on Count I and the parties stipulated to the dismissal of the remaining counts in order to facilitate Plaintiffs' appeal. Because there was a final judgment on the merits, resolution of the attorneys' fees issue turns on whether Plaintiffs are prevailing parties because they achieved their objectives in bringing the lawsuit, not on whether they received a decision which bears "the necessary judicial imprimatur." *Buckhannon*, 532 U.S. at 605.

distributor afforded to in-state brewers under the Liquor Control Act." In short, Plaintiffs were wholly unsatisfied with the consequences of their "significant constitutional victory."

The Seventh Circuit has cautioned courts to examine "the practical impact of the judgment." *Peterson v. Gibson*, 372 F.3d 862, 865 (7th Cir. 2004). Here, the practical impact of the judgment, which was stayed to give the General Assembly time to act, is that Plaintiffs are worse off than when they started. Plaintiffs wanted all brewers to be able to hold distributor's licenses so that Plaintiffs in turn could acquire the remaining interest in City Beverage. Instead, Plaintiffs received a stayed judgment that did not allow them to close their transaction, and eventually the legislature passed a new law, creating a "craft brewer's license" for in-state and out-of-state beer producers whose annual production is less than 15,000 barrels (465,000 gallons) and who may then obtain approval the ILCC to self distribute up to 7,500 barrels of that production in Illinois. While the law eliminates any offending distinction between the distribution rights of in-state and out-of-state beer producers, it also allows all small brewers to self distribute – and not just the few who were self-distributing at the time that Plaintiffs filed this lawsuit.. The Court cannot discern any direct benefit to Plaintiff from this result, nor do Plaintiffs claim a benefit beyond a "significant constitutional victory" and the vindication of important federal rights.

But even if the constitutional victory alone were enough to convey prevailing party status despite Plaintiffs' failure to (1) secure the remedy they wanted or (2) close their commercial transaction, the nominal success resulting from the constitutional victory amounts to a "Pyrrhic victory." Plaintiffs aimed to acquire 100% of a distributor and effectively collapse Illinois' three-tier system, and instead the 30% interest that they already own is in jeopardy and the marketplace is now more hospitable to their smaller competitors. In the Seventh Circuit's words,

Plaintiffs aimed "high and fell far short." *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997). This is particularly true here, where in all of the factually similar cases that were decided prior to this litigation, the district courts nullified the offending portion of the statute rather than extending it, as urged by Plaintiffs. In a sense, Plaintiffs took a calculated risk that the facts of this case would cause the Court to depart from the weight of authority holding that nullification, rather than extension, was appropriate in these circumstances. The facts presented did not move the Court in that direction, and Plaintiffs did not receive the result they hoped for, yet Plaintiffs seek to shift on to Defendants—and ultimately Illinois tax payers—the $1.6 million bill for their expedited litigation. Compare *id.* at 585 ("When the civil rights plaintiff aims small, and obtains an amount that is significant in relation to that aim (it need not reach the target), he is prima facie entitled to an award of fees even if the case establishes no precedent."). Simply put, under pertinent Supreme Court and Seventh Circuit authorities, there is no basis for fee shifting on the facts of this case.

In sum, the Court concludes that this case presents one of those relatively rare instances in which a party "formally prevails" on at least a portion of its lawsuit, but "should receive no attorney's fees at all." *Farrar*, 506 U.S. at 115. The Seventh Circuit's decision in *Cady* provides the best guidance, and under that decision, having fallen short of achieving their tripartite objective, Plaintiffs are not prevailing parties. Moreover, even if Plaintiffs could be termed "prevailing parties," they obtained, at best, a "technical victory [that is] so insignificant * * * as to be insufficient" to support an award of attorney's fees, especially when viewed in light of Plaintiffs' stated objectives. *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989); see also *Farrar v. Hobby*, 506 U.S. at 117 (noting that the reasonable fee award for a prevailing plaintiff who obtains only a "Pyrrhic victory" is zero); *Linda T. ex rel. William*

17

*A. v. Rick Lake Area School Dist.*, 417 F.3d 704, 708 (7th Cir. 2005). Or, put another way, even if the litigation could be said to have "alter[ed] the legal relationship between the parties" in a way that (briefly and marginally) benefited Plaintiffs (see *Farrar*, 506 U.S. at 111-12), Plaintiffs' overall lack of success in achieving their stated goal was so apparent that the only reasonable fee is zero.

## III. Conclusion

For these reasons, Plaintiffs' motion for attorneys' fees [167] is denied.

Dated: March 29, 2012  
_____  
Robert M. Dow, Jr.  
United States District Judge

18